UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

CHARLES ERIC HUFF,                                    Case No. DG 08-10065
                                                      Chapter 13
              Debtor.                                 Hon. Scott W. Dales

_____/


SUPPLEMENTAL OPINION REGARDING DISGORGEMENT OF FEES
AND DEBTOR'S MOTION TO RATIFY SALE


The Chapter 13 Trustee filed the Trustee's Motion to Disgorge Attorney's Fees Pursuant to 11 U.S.C. § 329 (DN 73, "Disgorgement Motion"), seeking recovery of $4,651 in fees ("Fees") from Roger G. Cotner, Debtor's counsel.  The Disgorgement Motion is premised on the uncontested assertion that Mr. Cotner received the Fees as a result of the Debtor's unauthorized, post-petition sale of a 2005 Land Rover motor vehicle ("Land Rover"), in exchange for releasing a security interest Mr. Cotner perfected on the eve of the bankruptcy filing.  The court held a hearing in Grand Rapids on September 10, 2009 to consider the Disgorgement Motion, and the closely related  Debtor's Motion For Approval of Sale of Personal Property *Nunc Pro Tunc* (DN 77, the "Sale Motion").  The court announced its intention to grant the Disgorgement Motion and deny the Sale Motion, giving reasons on the record.  This opinion supplements that record.

The material facts are not in dispute. In the days leading up to the bankruptcy filing, Charles Huff (the "Debtor") granted Mr. Cotner a security interest in the Land Rover to secure repayment of attorney fees.  On the day before filing, Mr. Cotner and the Cotner Law Office perfected the lien by causing it to be placed on the certificate of title.  The Debtor filed a voluntary Chapter 13 petition with this court on November 10, 2008.  After obtaining an

extension, he filed schedules and other documents one month later, listing the Land Rover on Schedule B and claiming a $5,500.00 exemption in it under 11 U.S.C. § 522(d)(5).

As reported in the Sale Motion, the Debtor took the Land Rover to an automobile auction in Chicago in late January, 2009, and sold it to non-party Allan La Fan for $14,950.00, without first seeking the court's approval. There has been no suggestion that the sale occurred in the ordinary course of the Debtor's business.  The Debtor believed he obtained the best possible price for the Land Rover, and no one disputes this assertion.

At the time of the sale, the first meeting of creditors had not been concluded, and the time to object to exemptions had not expired.  As a result, the Land Rover remained within the estate even assuming, *arguendo*, that property claimed as exempt under 11 U.S.C. § 522(d)(5) leaves the estate under 11 U.S.C. § 522(*l*) upon the expiration of the objection deadline set forth in Fed. R. Bankr. P. 4003(b).

Because the Debtor's counsel had bargained for a lien on the eve of bankruptcy -- a somewhat unusual transaction in itself -- the Debtor needed counsel's cooperation to effect the sale by releasing his security interest, which he did.  As recited in the Sale Motion,

> The Debtor provided his attorney with the sales proceeds. The Debtor's attorney deposited the sales proceeds into his client trust account, disbursed $10,375.00 to the debtor representing his amended exemption in the vehicle and disbursed $4,575.00 of the sales proceeds to Cotner Law Office.

*See* Sale Motion at ¶ 11.  Recognizing the controversy resulting from the sale and disposition of proceeds, the Debtor's counsel filed the Sale Motion to obtain an order authorizing the sale of the Land Rover to "quell the Court's, the Trustee's, and the IRS's concerns . . ." *See id.* at ¶ 14. The Sale Motion missed its mark in this regard because it plainly established several unlawful

transfers involving the Debtor and his counsel, not including the creation of the attorney's security interest in the first place.[1]

Specifically, the Debtor had no authority and no pretense of authority to sell the Land Rover, postpetition, to Mr. La Fan.  The court rejects Mr. Cotner's suggestion that he and his client failed to obtain permission because of exigent circumstances -- none was offered other than the prospect of obtaining a good price at auction. Mr. Cotner's own time-records submitted in support of his fee application confirm that he was aware of the sale three days before it occurred, contrary to his suggestion on several occasions in open court that he first learned of the sale when his client called him from the auction, as it was happening.  The sale of the Land Rover was unlawful.[2]  Moreover, as the Sixth Circuit recently observed in *Mitan v. Duvall (In re Mitan)*, 573 F.3d 237 (6th Cir. 2009), the court's authority under 11 U.S.C. § 105 to ratify transactions by entering *nunc pro tunc* orders must be used sparingly, and only in furtherance of the Bankruptcy Code.   By approving the sale in this case *nunc pro tunc*, the court would be lending its office to a series of transactions and related missteps in derogation of the Bankruptcy Code.  The court has no reason to doubt the adequacy of the sale price, but it cannot brook the Debtor's, and counsel's, disregard for the Bankruptcy Code, the Rules, the Trustee, other creditors, and the court.  The court cannot grant the Sale Motion under these circumstances.

The second transfer and third transfer from Mr. Cotner's trust account to the Debtor in supposed satisfaction of exemption rights and to Mr. Cotner himself in satisfaction of the eve-of-filing security interest are also unlawful for several reasons.  First, Mr. Cotner, an officer of this court in custody of property of the estate, was required by statute to remit the ill-gotten proceeds

---

[1] After the court and Mr. Cotner corresponded regarding the latter's compliance with MRPC 1.17(b) and 1.18, the court decided to take no action regarding its concerns about Mr. Cotner's role in securing his legal fees.

[2] Nothing in this opinion shall be construed to affect Mr. La Fan's interests, since he is not a party to these motions and his interests should be considered in the context of an adversary proceeding under 11 U.S.C. § 549, if the Trustee decides to file one.

3

to the Trustee. *See* 11 U.S.C. § 542(a). Second, as an attorney subject to regulation under 11 U.S.C. §§ 329 & 330, counsel knew full well that he could not be paid without court approval, yet his actions usurped the court's role. Disclosure of the unlawful actions under Fed. R. Bankr. P. 2016 or in a pre-confirmation plan amendment (DN 43) does not cure the offense in the court's view. No pretended exigency could authorize the attorney's distribution of the sale proceeds after receiving them from the client -- especially a distribution in satisfaction of the attorney's security interest -- in light of the mandates of Section 330 and 542, among other sections. Third, as a creditor with specialized knowledge of the Bankruptcy Code, Mr. Cotner knew or should have known that payment of claims is closely regulated by the court and the Trustee, and subject to statutory priorities. Mr. Cotner again arrogated to himself this authority, and for a short time profited by the usurpation, at the expense of, *inter alia*, the Internal Revenue Service. The court is particularly troubled because, from Mr. Cotner's time records submitted in support of his fee application, he spent many hours researching the Debtor's tax situation, reviewing transcripts of returns etc., and presumably received notice -- prior to the sale -- that the Internal Revenue Service filed secured and priority claims in this case secured by, *inter alia*, motor vehicles. *See* Proof of Claim No. 4, filed January 8, 2009. The court notes that, under its electronic filing procedures, the court sends electronic notice to Debtor's counsel automatically as each claim is filed.[3]

---

[3] Because the Debtor's exemption rights are governed by statutes not fully considered in the present Disgorgement Motion, which after all takes aim at counsel's failure to comply with the Code's compensation procedures, and because the Trustee has not formally sought recovery of the payment ostensibly made on account of the Land Rover exemption, the court is taking no action against the Debtor at this time. The court cautions the Debtor and his counsel, however, not to take the supposed exemption for granted because it appears from the record that tax liens or possibly non-dischargeable tax debts may limit the Debtor's exemption rights, even though the time to object to the exemption may have passed. *See* 11 U.S.C. § 522(c)(1) & (c)(2)(B); *compare* Fed. R. Bankr. P. 4003(b)(1) *with* 4003(b)(2). The Debtor is presently enjoying the benefits of the supposed exemption, thanks to the unauthorized sale and his attorney's distribution of the sale proceeds in derogation of the rights of the estate and its creditors, including the Internal Revenue Service, but this enjoyment may be short-lived. In other words, nothing contained in or omitted from this opinion should be construed as relieving the Debtor of any obligation to return the sale proceeds

Although the court believes that 11 U.S.C. § 329 and related sections governing compensation of debtors' counsel may authorize disgorgement as a sanction for non-compliance, the court rests its decision to order disgorgement primarily on 11 U.S.C. § 542, because Mr. Cotner retains property of the estate without authority, and is required by that statute to remit it to the Trustee. *See* 11 U.S.C. § 542(a); *see also In re Marin*, 256 B.R. 503 (Bankr. D. Colo. 2000).[4]

The court will enter separate orders with respect to the Sale Motion and the Disgorgement Motion, denying the former and granting the latter.

Date: September 14, 2009

Scott W. Dales
United States Bankruptcy Judge

---

under 11 U.S.C. § 542 or otherwise. The court's failure to grant relief with respect to the Debtor at this time simply reflects the court's reluctance to take such action without a motion, and the court's observation that the Debtor's rights and duties under the Code and Rules may differ from those of his counsel.

[4] The unauthorized postpetition sale and related transfer of sale proceeds also implicates 11 U.S.C. § 549 because the Trustee is effectively seeking to recover the sale proceeds from a transferee -- Mr. Cotner. At the hearing on the Disgorgement Motion, however, Mr. Cotner expressly waived any right to an adversary proceeding after the court suggested that the Trustee's request to "recover money or property" arguably required one. *See* Fed. R. Bankr. P. 7001(1); *but see* Fed. R. Bankr. P. 1001. Given the absence of any material factual dispute, insisting upon an adversary proceeding would elevate form over substance. Mr. Cotner wisely waived the additional procedures.